**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| JASON CRAFT | CIVIL ACTION NO. 20-0853 |
| VERSUS | JUDGE ALEXANDER C. VAN HOOK |
| PARISH OF JEFF DAVIS, ET AL. | MAGISTRATE JUDGE LEBLANC |

## MEMORANDUM RULING

Pending before the Court is a Motion for Partial Summary Judgment ("Motion") filed by Defendants Sheriff Ivy Woods and Warden Dustin Locke. Record Document 60. Plaintiff Jason Craft ("Craft") filed an Opposition to Defendant's Motion ("Opposition"). Record Document 163. For the following reasons, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

## THE ALLEGATIONS

This lawsuit arises from the events that transpired following Craft's arrest and pretrial detention. The facts set forth herein were provided by Craft in his original complaint.

Craft was arrested for allegedly raping a minor child who, along with her mother, was living with him.[1] Although the nature of the relationship varies throughout the pleadings, Craft also alleges that Defendant Jason Cartwright ("Cartwright") was in some way related to the minor child and/or her mother. Record Documents 1 at ¶11; 163 at 1. While still a pretrial detainee, Craft was booked into

---

[1] Plaintiff was subsequently convicted of first-degree rape and remains incarcerated. *State of Louisiana v. Craft*, 355 So.39 1237 (La. App. 3d Cir. 2023).

the Jefferson Davis Parish Consolidated Jail ("Parish Jail"). *Id*. During dinner on July 3, 2019, two Parish Jail deputies, Defendants Cartwright and John Kurtz ("Kurtz") pointed out Craft to a jail trustee. Record Document 1 at ¶11. Following dinner, Craft returned to his cell, where several other inmates surrounded and attacked him, causing him to lose consciousness after crawling under a bunk bed in an attempt to escape the assault. Record Document 1 at ¶11. When he awoke, Cartwright and Kurtz were shouting profanities at him and telling him to get up. *Id*. When he complied, he was escorted to a second cell where he was assaulted again by fellow inmates. *Id*. During the second assault he was not only beaten but very hot water was poured over his legs and feet. *Id*. Craft again lost consciousness and was awakened, lying in a pool of blood, by Cartwright and Kurtz. Record Document 1 at ¶¶11-12.

Craft repeatedly pleaded for help and medical attention, both on his way between cells and after the attack in the second cell, but Cartwright and Kurtz refused, instead telling him to take a shower where he was threatened with sexual assault. *Id*. Later, Craft was taken to the American Legion Hospital for medical treatment. *Id*. At the hospital, Craft was diagnosed with second degree burns, abrasions, eye contusions, edema, lacerations, and shoulder pain. *Id*. He was treated for those injuries and instructed to follow up in 48 hours and was then returned to the Parish Jail and placed in a different cell. Record Document 1 at ¶¶13-14. Two days later Craft was taken to Our Lady of Lourdes Regional Medical Center for his follow-up treatment, where he was given medication, which he was told needed to be

kept refrigerated, for continued treatment at the Parish Jail. Record Document 1 at ¶15. Craft was then returned to the Parish Jail; however, jail personnel did not keep the medication refrigerated as requested. *Id.*

As a result of these events Craft filed suit, claiming violations of 42 U.S.C. § 1983, the Due Process clause of the Fourteenth Amendment, the Louisiana Constitution, and Louisiana Civil Code Article 2315, against the Parish of Jefferson Davis and several Parish Jail officials and employees in both their individual and official capacities, specifically: Sheriff Ivy Woods ("Sheriff Woods"), Warden Dustin Locke ("Warden Locke"), Cartwright, and Kurtz. Craft alleges that Cartwright planned the attack on him as revenge for Craft's rape of the minor child, that Kurtz aided Cartwright in his plan, and that Sheriff Woods and Warden Locke were complicit in the attack in their supervisory roles.[2]

## **PROCEDURAL BACKGROUND**

This litigation has a lengthy procedural history, extending over six years and involving significant motion practice, including numerous discovery disputes. Although Craft was once represented by counsel, he is now proceeding pro se. Cartwright and Kurtz answered the original Complaint (Record Documents 15 and 18) but have since stopped responding to filings and court orders and have not updated their addresses with the Court. At this stage of the litigation, the Magistrate Judge has limited discovery to the issue of qualified immunity, leaving all other

---

[2] The Parish of Jefferson Davis was previously dismissed from the case (Record Document 67), leaving only federal and state law claims against Defendants Sheriff Woods, Warden Locke, Cartwright and Kurtz, each in their individual and official capacities.

scheduling order deadlines stayed pending resolution of the qualified immunity claims.[3]

## LAW AND ANALYSIS

**A. Summary Judgment Standard.**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Quality Infusion Care, Inc. v. Health Care Serv. Corp.*, 628 F.3d 725, 728 (5th Cir. 2010). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.* "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party need not support its motion with affidavits or other evidence, but to defeat a motion for summary

---

[3] This case has been plagued with discovery issues ranging from problems delivering discovery to Craft while incarcerated to the defendants being unresponsive to overly broad discovery requests. The Magistrate Judge resolved the issues with discovery in late 2024. Although there were some discovery requests made by Craft to which he did not receive a response, the Court has reviewed those requests and specifically finds that they do not relate to qualified immunity.

judgment the non-movant must present evidence sufficient to establish the existence of each element of its claim as to which it will have the burden of proof at trial. *Id.* at 322.

## B. Defendants' Motion for Partial Summary Judgment.

Sheriff Woods and Warden Locke seek summary dismissal of Craft's official capacity claims against them, a finding of qualified immunity, and dismissal of all Louisiana state law claims for negligence. The Magistrate Judge limited discovery to the issue of qualified immunity, so this Court is limiting its consideration of the Motion to that issue, along with several official capacity claims made by Craft that can be addressed herein as a matter of law.[4]

### 1. Official Capacity Claims.

To be sued in an official capacity, the defendant must be an official acting as a policymaker, such that the decisions of the policymaker represent official policy of the local government unit. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). Making that determination is a matter of state law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988) (citing *Pembauer v. Cincinnati*, 475 U.S. 469, 483 (1986)). Accordingly, we look to Louisiana law to determine whether the individual defendants were policymakers for the local government unit; here, the Parish Jail.[5]

---

[4] The affirmative defense of qualified immunity only applies to defendants sued in their individual capacity; it does not protect defendants sued in their official capacity. *Kentucky v.* Graham, 473 U.S. 159, 166-67 (1985).

[5] Because the Parish Jail is not a juridical person capable of being sued, plaintiff's claims must be brought against the appropriate policymakers of the Parish Jail in their official capacity. *Guillot on behalf of T.A.G. v. Russell*, 59 F.4th 743, 751 n.5 (5th Cir. 2023).

Under the Louisiana Constitution Article 5, Section 27, the parish sheriff is the chief law enforcement officer of the parish and has been found under the state constitution to be a final policymaker. *Guillot*, 59 F.4th at 750-51; *Craig v. St. Martin Parish Sheriff*, 861 F. Supp. 1290, 1301 (W.D. La. 1994). The sheriff is the final policymaker with respect to operation of the parish jail or detention center. *See, e.g., Langley v. City of Monroe*, 582 So. 2d 367, 368 (La. App. 2d Cir. 1991) ("The [parish] has fiscal obligations related to the jail, but the sheriff has the duty of operating the jail and insuring that the prisoners are properly cared for, fed and clothed."); *Jones v. St. Tammany Parish Jail*, 4 F. Supp. 2d 606, 613 (E.D. La. 1998) ("Sheriffs in Louisiana are final policymakers with respect to management of the jail. The Sheriff's policy-making authority over management of the jail is not the result of a delegation from the parish or any other local government entity. The Sheriff's authority is derived from the state constitution, not the parish.").

Accordingly, the Court finds that Sheriff Woods is a policymaker for the Parish Jail, and the affirmative defense of qualified immunity does not apply to him in his official capacity. Because the Court is only ruling herein on Defendants' claim of qualified immunity, Craft's claims against Sheriff Woods in his official capacity survive, subject to Sheriff Woods' right to file a successive motion for summary judgment that specifically challenges the official capacity claims against him.

In contrast to the authority vested in parish sheriffs, nothing in Louisiana law grants a jail warden final policymaking authority for jails or detention centers. *See, e.g., Oladipupo v. Austin*, 104 F. Supp. 2d 626, 641 (W.D. La. 2000) ("As stated above,

the Sheriff alone has the responsibility to maintain his parish jail. Neither the Warden nor any of the other defendants are under any such a duty.

Craft, in a recent filing, has speculated that Sheriff Woods delegated his policymaking authority to Warden Locke. Record Document 184 at 3-4. However, no summary judgment evidence has been adduced to support any such speculation, and case law is quite clear that merely delegating decision-making authority to another is insufficient to transfer policy-making authority, particularly where any such decisions remain subject to review by the actual policymaker. *See, e.g., Praprotnik*, 485 U.S. at 130; *Valle v. City of Houston*, 613 F.3d 536, 543 (5th Cir. 2010); *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 167 (5th Cir. 2010); *Webb v. Town of St. Joseph*, 925 F.3d 209, 217 (5th Cir. 2019); *Flanagan v. City of Dallas, Tex.*, 48 F. Supp. 3d 941, 949 (N.D. Tx. 2014).

Similarly, Craft has offered no evidence that Cartwright and Kurtz, who reported to Warden Locke and were subordinate to him, had any policymaking authority at the Parish Jail. The Court concludes that Warden Locke, Cartwright, and Kurtz were not policymakers for the Parish Jail, so there is no basis for claims against them in their official capacities. Accordingly, plaintiff's claims against them in their official capacities are hereby **DISMISSED WITH PREJUDICE**.

## 2. Qualified Immunity.

In their Motion, Sheriff Woods and Warden Locke have each asserted the doctrine of qualified immunity as a threshold affirmative defense to Craft's Section 1983 claims against them in their individual capacities. Record Documents 10, 15 and 18. [6] As discussed in more detail below, qualified immunity applies because there is no factual support for Craft's individual capacity claims against Sheriff Woods or Warden Locke.

Section 1983 provides a federal cause of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" against any person acting under color of state law. *See* 42 U.S.C. § 1983. Section 1983 does not itself create substantive rights; rather, it merely provides remedies for the violation of rights guaranteed to citizens by the United States Constitution or other federal laws. *See Graham v. Connor*, 490 U.S. 386, 393-94 (1989). The doctrine of qualified immunity shields government officials from liability for claims against them in their individual capacity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity serves to shield government officials from harassment, distraction, and liability when they perform their duties reasonably, and it applies regardless of whether the official's error is "a

---

[6] Cartwright and Kurtz have not joined in this Motion, and therefore, the Court makes no determination on whether they are entitled to qualified immunity.

8

mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

Because qualified immunity is "an immunity from suit rather than a mere defense to liability, ... it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Consequently, qualified immunity questions should be resolved at the earliest possible stage in litigation. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). While qualified immunity is technically an affirmative defense, once it has been raised, it is the plaintiff's burden to negate the defense. *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

In *Saucier v. Katz*, 533 U.S. 194, 201 (2001), the Supreme Court held that a court ruling upon the issue of qualified immunity must apply a two-step analysis. First, the court must determine whether the facts alleged show the officer's conduct violated a constitutional right. *Id.* Second, if a violation has been established, the court must determine whether the officer's actions were objectively reasonable in light of clearly established law at the time of the conduct in question. *Id.* Lower courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

Under either of the two prongs, the Court "may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Winzer v. Kaufman Cnty.*, 916 F.3d 464, 473–74 (5th Cir. 2019). Instead, the Court must view the evidence in the light most favorable to the opposing party. *Id.* A Section 1983 complaint must

allege that the constitutional or statutory deprivation was intentional or due to deliberate indifference and not the result of mere negligence. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

"The constitutional rights of a pretrial detainee are found in the procedural and substantive due process guarantees of the Fourteenth Amendment." *Ford v. Anderson County, Tex.*, 102 F.4th 292, 307 (5th Cir. 2024). This right extends to required medical treatment. *Id.* at 307 n.5.

### (a) Sheriff Woods.

Craft does not allege, and there is no competent summary judgment evidence in the record to suggest, that Sheriff Woods participated in attacking Craft, in delaying any medical treatment, or in refusing to refrigerate his prescribed medication. Record Documents 1 at ¶¶23-29; 163 at 7-23. Instead, Craft makes conclusory statements, without citing any competent evidence, that because several people allegedly knew of the plan to attack him, Sheriff Woods must have known. He similarly claims that Sheriff Woods should have anticipated, and had a policy articulated and in place to address, the likely mistreatment of an arrestee accused of a heinous crime against a victim who had a connection to a jail employee. Record Document 163 at 20. Such a sharply focused argument is unavailing. *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005) ("Plaintiffs cannot prevail by styling their complaints about the specific injury suffered as a failure to train claim."). Indeed, the Supreme Court specifically warned against such artful pleading in *City of Canton v. Harris*, 489 U.S. 378, 391 (1989) ("Neither will it suffice to prove that an

injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid *the particular injury-causing conduct*.") (emphasis in original).

Craft fails to cite any declaration, affidavit, authenticated correspondence, or any other competent evidence showing, even when analyzed in the light most favorable to him, that Sheriff Woods knew or was made aware of the circumstances of Craft's arrest, of Carwright's alleged association with the victim and/or her mother, or of Cartwright's intention to contravene Parish Jail policy and arrange an attack on Craft.[7]

First, as noted above, there is no evidence that Sheriff Woods participated in the attack on Craft or his subsequent medical treatment, so Sheriff Woods cannot have directly violated Craft's clearly established constitutional right as a pretrial detainee to be free from punishment or to obtain required medical treatment. And Sheriff Woods cannot be liable for the actions of his subordinates under any theory of *respondeat superior* or vicarious liability. *Ashcroft v. Iqbal*, 556 U.S 662, 676 (2009).

Craft's failure-to-train or supervise theory fares no better. Inquiry into such a theory considers three elements: (1) the supervisor failed to train or supervise the subordinate; (2) a causal link between the failure to train or supervise and the

---

[7] Craft repeatedly makes statements "under penalty of perjury" without any underlying support. Such conclusory and self-serving statements are not competent summary judgment evidence. *Deal v. Outback Steakhouse of Florida, LLC*, 2021 WL 3577003, at *3 (W.D. La. 2021) ("It is well established that conclusory allegations unsupported by specific facts will not preclude summary judgment and that Plaintiff cannot rest on mere allegations for her claim to move forward without any significant probative evidence tending to support the complaint.")

constitutional violation; and (3) the failure to train or supervise amounts to deliberate indifference. *Tuttle v. Sepolio*, 68 F.4th 969, 975 (5th Cir. 2023).

Craft cites no evidence suggesting that Sheriff Woods implemented a policy accepting, or had an unwritten policy tolerating, physical or medical mistreatment of pretrial detainees by inmates or jail staff. Thus, Sheriff Woods could only be liable under these circumstances if a pattern or practice of such mistreatment of pretrial detainees put him on notice that his subordinates were not following the Parish Jail policies precluding such actions, and further training and supervision were required. *Guillot*, 59 F.4th at 753 ("This circuit has consistently rejected the notion that one-off actions constitute a policy."). "[A] failure to follow prison policies, procedures, or regulations – without more – does not give rise to a constitutional violation." *Id.; cf. Tuttle*, 68 F.4th at 975-76 (finding that the supervisor's knowledge that the subordinate officer had previously obtained search warrants under fraudulent circumstances, and the supervisor's failure to address such fraudulent conduct, satisfied the deliberate indifference element).

Craft fails to adduce any evidence of other, similar incidents towards similarly situated pretrial detainees, let alone that Sheriff Woods knew of such incidents and ignored them. Thus, Sheriff Woods' failure to prevent the attack on Craft was objectively reasonable. Accordingly, Sheriff Woods is entitled to qualified immunity as to Craft's Section 1983 claims against him in his individual capacity.

**(b) Warden Locke.**

For almost identical reasons, Warden Locke is also protected by the doctrine of qualified immunity. There is no summary judgment evidence that Warden Locke participated in any of the events leading up to or following the attack on Craft, that he encouraged or tolerated Craft's mistreatment, or that there was any pattern or practice of pretrial detainee abuse at the Parish Jail that Warden Locke ignored or tolerated to create a colorable argument that he was deliberately indifferent to such conduct. Absent any competent evidence Warden Locke violated Craft's due process rights, he is entitled to qualified immunity as to Craft's Section 1983 claims against him in his individual capacity.

### 3.  State Law Claims.

Federal qualified immunity does not apply to state tort law claims. *Tuttle*, 68 F.4th at 976 (citing *Brown v. Miller*, 519 F.3d 231, 238-39 (5th Cir. 2008)). Because the Court is only addressing federal qualified immunity and official capacity issues in this ruling, it makes no decision as to Craft's state law claims and those claims continue.[8]

---

[8]  The Court notes that, although Sheriff Woods and Warden Locke accurately state the elements to be considered when determining liability on the merits under Louisiana Civil Code Article 2315, they do not argue or brief whether they are entitled to qualified immunity under Louisiana law. They may raise this argument in a successive motion, but must provide adequate briefing.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Motion for Partial Summary Judgment, Record Document 60, is **GRANTED IN PART** as to Craft's federal claims against defendants Warden Locke, Cartwright and Kurtz in their official capacities, and defendants Sheriff Woods and Warden Locke in their individual capacities, and all such federal claims are **DISMISSED WITH PREJUDICE**; otherwise, the Motion is **DENIED**.

To summarize, the Court dismisses all federal claims against Warden Locke. The Court dismisses the federal individual capacity claims against Sheriff Woods and the federal official capacity claims against Cartwright and Kurtz.

The following claims survive: federal official capacity claims against Sheriff Woods; state law claims against Sheriff Woods, Warden Locke, Cartwright and Kurtz; and federal individual capacity claims against Cartwright and Kurtz.

**DONE AND SIGNED** at Shreveport, Louisiana, this 16th day of July, 2026.

ALEXANDER C. VAN HOOK
UNITED STATES DISTRICT JUDGE